# Guidance on Application of Federal Vacancies Reform Act of 1998

*This memorandum provides guidance on the application of the Federal Vacancies Reform Act of 1998 to vacancies in Senate-confirmed offices within the Executive Branch.*

March 22, 1999

MEMORANDUM OPINION FOR AGENCY GENERAL COUNSELS

On October 21, 1998, the Federal Vacancies Reform Act of 1998 ("Vacancies Reform Act" or "Act") was signed into law.[1] The Vacancies Reform Act replaces the old Vacancies Act and alters the way in which vacancies in presidentially appointed, Senate-confirmed offices within the Executive Branch may be filled on a temporary basis. The following Q&As are intended to provide general guidance on the Vacancies Reform Act.

### Table of Subject Areas Covered by these Questions and Answers:

| | |
|---|---|
| What is the effective date of the Act? | Q1 |
| How does the Act treat vacancies that arose before the effective date? | Q2 |
| What constitutes a vacancy? | Q3 |
| Which offices are covered by the Act? | Q4–Q9 |
| Who can serve as an acting officer? | Q10–Q21 |
| What are the time limits on an acting officer's service? | Q22–Q38 |
| What enforcement provisions apply under the Act? | Q39–Q49 |
| What are the reporting requirements under the Act? | Q50–Q53 |

**Question 1.** When did the Vacancies Reform Act become effective?

**Answer.** The Vacancies Reform Act took effect on November 20, 1998.

**Question 2.** Does the Vacancies Reform Act affect offices that became vacant before November 20, 1998?

**Answer.** For offices that became vacant before November 20, 1998, the *only* provision of the Vacancies Reform Act that applies is the limitation on how long someone may serve in an acting capacity for that office. Further, that time limit is the only part of the Act that applies even if no one is designated to perform the duties of the office on a temporary basis until after November 20, 1998, as long as the office was vacant before that date. (For a more complete discussion of the Vacancies Reform Act's application to offices that became vacant before

---

[1] *See* Pub. L No. 105–277, Div. C, tit 1, § 151, 112 Stat 2681, 2681–611 to –616 (codified at 5 U.S.C §§ 3345–3349d (Supp IV 1998)) For ease of reference, further citation to the Vacancies Reform Act will refer only to the section at which the provision is to be codified.

November 20, 1998, including the calculation of the time limits that apply to acting officers filling those offices, see Memorandum for Agency General Counsels, from Beth Nolan, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Initial Guidance on the Federal Vacancies Reform Act of 1998* (Nov. 13, 1998).)

In contrast, the full scope of the Vacancies Reform Act applies to an office that becomes vacant on or after November 20, 1998, including the Act's restrictions on who may serve in an acting capacity and on which duties of the office may be performed by someone other than an acting officer serving in conformity with the Act.

**Question 3.** When does an office become "vacant" for purposes of the Vacancies Reform Act?

**Answer.** Under the Vacancies Reform Act, a vacancy arises when a relevant officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office." The full range of what would constitute being "otherwise unable to perform the functions and duties of the office" is unspecified in the Act, except that the Act provides that "the expiration of a term of office is an inability to perform the functions and duties of such office." 5 U.S.C. § 3345(c)(2). In floor debate, Senators said, by way of example, that an officer would be "otherwise unable to perform the functions and duties of the office" if he or she were fired, imprisoned, or sick. *See* 144 Cong. Rec. S12,823 (daily ed. Oct. 21, 1998) (statement of Sen. Thompson); *id.* at S12,824 (statement of Sen. Byrd). The Office of Legal Counsel ("OLC") can assist you with any questions about whether an office is vacant for purposes of the Act.

**Question 4.** Which offices are covered by the Vacancies Reform Act?

**Answer.** Generally, the Vacancies Reform Act applies to any office within an Executive agency to which appointment is required to be made by the President, by and with the advice and consent of the Senate (a "PAS position"). The Act, however, excludes from its coverage a few specified offices. The Act also recognizes that a number of PAS positions are covered by other statutes that specifically address how the office is to be filled on a temporary basis. *See* Q6–Q8 for a discussion of the PAS positions expressly excluded from coverage by the Act and of the statutes that continue to apply to filling certain vacant PAS positions on a temporary basis.

**Question 5.** What is an "Executive agency" within the meaning of the Vacancies Reform Act?

**Answer.** In short, "Executive agency" as used in the Vacancies Reform Act includes almost the entire Executive Branch. Under the Vacancies Reform Act, Executive agency has the same meaning given to that term in 5 U.S.C. § 105 (1994), except that the Act also expressly includes within the definition of Executive agency the Executive Office of the President and expressly excludes from that definition the General Accounting Office. Section 105 of title 5 defines "Executive agency" to mean "an Executive department, a Government corpora-

tion, and an independent establishment." The "Executive departments" are listed in 5 U.S.C. § 101 (1994 & Supp. II 1996); "Government corporation" is defined in 5 U.S.C. § 103 (1994) as "a corporation owned or controlled by the Government of the United States"; and "independent establishment" is defined in 5 U.S.C. § 104 (1994), in relevant part, as "an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." [2]

**Question 6.** Are there executive-branch PAS positions that are not covered by the Vacancies Reform Act?

**Answer.** Yes, the Vacancies Reform Act expressly excludes certain offices from coverage under the Act. The Act does not apply to any PAS who is (1) a member of a "board, commission, or similar entity that is composed of multiple members and governs an independent establishment or Government corporation;" (2) a "commissioner of the Federal Energy Regulatory Commission;" (3) a "member of the Surface Transportation Board;" or (4) a judge on "a court constituted under article I of the United States Constitution." 5 U.S.C. § 3349c.

**Question 7.** If a position meets the definition of a covered office under the Vacancies Reform Act, is the Act necessarily the exclusive means of temporarily filling the vacancy?

**Answer.** The Vacancies Reform Act was intended in most cases to be the exclusive means for filling a vacant executive-branch PAS position (i.e., having a person designated as the "Acting" officer). The Act also recognizes, however, the continued applicability of certain other mechanisms for filling PAS positions on a temporary basis. In particular, the Act expressly recognizes that a PAS position may be filled temporarily through (a) a recess appointment and (b) a statutory provision that "expressly [i] authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or [ii] designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity." 5 U.S.C. § 3347(a). In addition, § 3349b of the Act provides that the Act does not alter the application of a "statute that authorizes a person to continue to serve in any office — (1) after the expiration of the term for which that person is appointed; and (2) until a successor is appointed or a specified period of time has expired." 5 U.S.C. § 3349b. The Act makes clear, however, that an agency's organic statute does not provide authorization for filling PAS positions on a temporary basis. *See* Q9.

**Question 8.** Is there a list of the statutes that continue to authorize the temporary filling of a vacant PAS position?

---

[2] Although the military departments are defined separately in 5 U.S.C. § 102 (1994), the Committee Report indicates that they are nonetheless intended to be covered by the Act. *See* S Rep No 105–250, at 12 (1998) ("Because the Department of Defense is a department within the meaning of 5 U.S.C. § 101, the military departments, which are located in the Department of Defense, are also covered by this Act ")

**Answer.** The Report of the Committee on Governmental Affairs, United States Senate, on the Vacancies Reform Act lists forty such statutes. *See* S. Rep. No. 105–250, at 16–17. This list is not comprehensive, however, and each Executive agency will need to determine which statutes apply to its PAS positions. OLC can assist you with any questions about the continued applicability of specific statutes.

**Question 9.** May Executive agencies continue to rely on their organic authorities to designate acting officers for positions covered by the Vacancies Reform Act?

**Answer.** No. The Vacancies Reform Act provides that ''[a]ny statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not'' the type of statutory provision that remains a separate, viable authority for filling vacant PAS positions on a temporary basis. 5 U.S.C. § 3347(b).

**Question 10.** Who may serve in an acting capacity for a vacant executive-branch PAS position under the Vacancies Reform Act?

**Answer.** There are generally three categories of people who may serve in an acting capacity for vacant PAS positions under the Vacancies Reform Act: (1) first assistants to the respective vacant offices, (2) PAS officers designated by the President, and (3) certain senior agency employees designated by the President. 5 U.S.C. § 3345(a).

**Question 11.** Who is the first assistant to the office?

**Answer.** The Vacancies Reform Act does not define the term ''first assistant.'' The Committee Report, however, indicates that establishing first assistants by statute or by regulation would be sufficient under the Act. *See* S. Rep. No. 105– 250, at 12. There is also some support for a broader definition of a first assistant. *See* 144 Cong. Rec. S11,037 (daily ed. Sept. 28, 1998) (statement of Sen. Lieberman) (identifying first assistant as ''a term of art that generally refers to the top deputy'' to the position). At a minimum, a designation of a first assistant by statute, or by regulation where no statutory first assistant exists, should be adequate to establish a first assistant for purposes of the Vacancies Reform Act. Others not designated by statute or regulation also may qualify as first assistants under the Act, but there is less explicit support in the legislative history for this proposition.

**Question 12.** How does the first assistant begin to serve as an acting officer for a vacant position?

**Answer.** Under the terms of the Vacancies Reform Act, if there is a first assistant to the vacant office, that first assistant begins to serve as the acting officer immediately and automatically upon the occurrence of the vacancy. 5 U.S.C. § 3345(a)(1).

**Question 13.** If someone is designated to be first assistant after the vacancy occurs, does that person still become the acting officer by virtue of being the first assistant?

**Answer.** While the Vacancies Reform Act does not expressly address this question, we believe that the better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer by virtue of being the first assistant. While someone who is not the first assistant when the vacancy occurs would not qualify to be the acting officer by virtue of being the first assistant, the President may still designate that person to serve as the acting officer if he or she meets the qualifications for serving as an acting officer under a different provision of the Act. *See* Q17–Q20.*

**Question 14.** Are there limitations on the ability of a first assistant to serve in an acting capacity?

**Answer.** In addition to the time limit on the length of service of an acting officer, *see* Q23, the Vacancies Reform Act also limits a first assistant's ability to be the nominee for the office and, at the same time, to continue to serve as the acting officer for that office. If the President nominates the first assistant for the vacant office, the first assistant may continue to serve as the acting officer for that position only if (1) the first assistant served as first assistant for at least ninety days (they need not be consecutive days) during the 365-day period that preceded the beginning of the vacancy, or (2) the office of first assistant is itself a PAS position and the Senate approved the appointment of that first assistant to the first assistant's position. 5 U.S.C. § 3345(b).

**Question 15.** Does this limitation on the ability to be both the nominee and the acting officer apply only to first assistants, or does it also apply to persons who qualify to serve as an acting officer under other provisions of the Vacancies Reform Act?

**Answer.** The limitation on the ability to be the nominee for the vacant position and to serve as the acting officer applies only to persons who serve as acting officers by virtue of having been the first assistant to the office. If someone is serving in an acting capacity on another basis, i.e., as a PAS or a senior agency employee designated by the President, this particular limitation does not apply. However, because senior agency employees may not be designated by the President unless they have served in the agency for ninety days within the year preceding the vacancy, *see* Q20, a similar time limitation in fact applies to anyone who is not already in a PAS position.

**Question 16.** If the first assistant also qualifies to serve in an acting capacity under another provision of the Vacancies Reform Act, does the limitation on the ability to be both the nominee and the acting officer apply?

**Answer.** If the first assistant also qualifies to serve in an acting capacity under another category, he or she may be designated under that category. Accordingly, if the first assistant meets the requirements to be an acting officer based on his or her status as a senior agency employee, the first assistant could be nominated

---

* Editor's Note: In 2001, the Office of Legal Counsel reversed its position on this issue and now believes that, on the better view, someone who becomes the first assistant after a vacancy occurs may serve as the acting officer by virtue of being the first assistant

for the position and continue to serve in an acting capacity as long as the President made the required designation for that senior agency employee to serve as the acting officer. (As noted above and discussed in more detail in question 20, the requirements for a senior agency employee to serve as an acting officer include that the employee have served within the agency for at least ninety days in the year preceding the vacancy.)

**Question 17.** How does a PAS officer come to serve as an acting officer for a vacant position?

**Answer.** A PAS officer may begin serving as an acting officer for a vacant position only upon direction from the President (and only the President) that that PAS officer is to perform the functions and duties of the vacant office in an acting capacity. 5 U.S.C. § 3345(a)(2).

**Question 18.** Does the Vacancies Reform Act impose any limitations on which PAS officers the President may designate to serve in an acting capacity for a vacant office?

**Answer.** The Vacancies Reform Act does not impose any limitations on which PAS officers the President may designate. There are no length of service requirements, and the PAS officer need not be from the same agency as that in which the vacancy arose.

**Question 19.** How does a senior agency employee come to serve as an acting officer for a vacant position?

**Answer.** As with PAS officers, certain senior agency employees (*see* Q20) may begin to serve as the acting officer for a vacant position upon a directive from the President (and only the President) instructing that senior agency employee to perform the functions and duties of the vacant office in an acting capacity. 5 U.S.C. § 3345(a)(3).

**Question 20.** Does the Vacancies Reform Act impose any limitations on which senior agency employees the President may designate to serve as acting officers?

**Answer.** Yes, the Vacancies Reform Act imposes a number of limitations on which senior agency employees the President may designate. First, the senior agency employee must be from the same Executive agency as the one in which the vacancy occurs. 5 U.S.C. § 3345(a)(3)(A). Second, the senior agency employee must have served in a position within that Executive agency for not less than ninety days during the 365 days preceding the vacancy. *Id.* Third, the rate of pay for the position in which the senior agency employee served must be at least GS–15, step 1. 5 U.S.C. § 3345(a)(3)(B).

**Question 21.** Are there any other categories of persons qualified to serve in an acting capacity under the Vacancies Reform Act?

**Answer.** Yes, with regard to PAS positions that are filled for a term set by statute and are located in an Executive department (a narrower category than Executive agencies — *see* Q5), the Vacancies Reform Act also provides for a fourth category of persons who may serve in an acting capacity. For such an office, the President (and only the President) may direct the officer whose term

is expiring to continue to serve in that office if that officer is nominated for an additional term to the same office without a break in service. 5 U.S.C. § 3345(c)(1).

**Question 22.** Does the Vacancies Reform Act impose the same time limits on officers who continue to serve once their terms have expired as apply under the Act to the categories of acting officers?

**Answer.** No, the Act sets out an additional limitation on how long such an officer may continue to serve. In addition to being subject to the general time limits of the Vacancies Reform Act, the Act also provides that the carry-over officer may no longer continue to serve on a temporary basis once the officer's nomination is either confirmed or rejected by the Senate.

More generally, although the Vacancies Reform Act does not impose such a limitation on other acting officers who are nominated to fill the vacant position in which they are serving in an acting capacity, a similar limitation likely will apply to any such officer as a practical matter. Congress routinely passes an appropriations rider prohibiting the use of appropriated funds to pay someone for filling a position for which that person was nominated if the Senate has voted to reject the nomination. *See, e.g.*, Section 610 of the Treasury and General Government Appropriations Act, 1999, Pub. L. No. 105–277, Div. A, tit. 1, § 101(h), 112 Stat. 2681–480, 2681–515 (1998).

**Question 23.** Generally, for how long may a vacant office be filled on an acting basis under the Vacancies Reform Act?

**Answer.** The Vacancies Reform Act does not provide for a static, set number of days during which an acting officer may serve. Instead, the Vacancies Reform Act's limitation on the length of service involves a series of interrelated provisions tied to the submission of a nomination for the vacant position. These provisions permit an acting officer to serve for a 210-day period prior to the submission of a nomination. Once a nomination is submitted, the acting official may continue to serve until the Senate takes action on the nomination or the nomination is withdrawn. If the first nomination is rejected or returned by the Senate, or withdrawn by the President, a new 210-day period of service begins. Once a second nomination is submitted, an acting officer again may continue to serve as long as the nomination is pending in the Senate. If the second nomination also is rejected, returned, or withdrawn, then a final 210-day period begins to run. The submission of a third nomination does not suspend the running of this final 210-day period; once those 210 days have run, the functions and duties of the vacant office may no longer be performed by an acting officer. 5 U.S.C. § 3346. *See* questions 25–38 below for a more detailed discussion of how the time limits are calculated under the Vacancies Reform Act.

**Question 24.** Are there vacancies to which these time limits do not apply?

**Answer.** Yes, the time limits of the Vacancies Reform Act do not apply to vacancies caused by sickness. In the case of a PAS who is unable to perform the functions and duties of the office because he or she is sick, the acting officer

may continue to serve until the sick PAS officer recovers, at which point the PAS officer again resumes performing the functions and duties of the office. 5 U.S.C. § 3346(a).[3]

**Question 25.** If the President does not submit a nomination for the vacant position, how long may an acting officer perform the functions and duties of the office?

**Answer.** If the President does not submit a nomination, an acting officer may serve in an acting capacity during an initial 210-day period. 5 U.S.C. § 3346(a)(1). Under various provisions of the Act, the length of this initial period may be adjusted in a number of ways. *See* Q27 and Q36–Q38 (discussing possible adjustments to this period).

**Question 26.** From what date do you begin calculating the initial 210-day period?

**Answer.** The Vacancies Reform Act clarifies prior law, making it clear that the time limit begins to run on the date the vacancy occurs, rather than on the date the acting officer begins performing the functions and duties of the office. 5 U.S.C. § 3346(a)(1).

**Question 27.** Are there situations in which the time limit will be calculated beginning on a date other than the date the vacancy occurred?

**Answer.** Yes, the Vacancies Reform Act provides that "[i]f a vacancy occurs during an adjournment of the Congress sine die, the 210-day [initial limit] shall begin on the date that the Senate first reconvenes." 5 U.S.C. § 3346(c). So for example, the Congress adjourned sine die on October 21, 1998. *See* 144 Cong. Rec. H11,704, S12,810, S12,979 (daily ed. Oct. 21, 1998). The *Senate* did not reconvene until January 6, 1999. As a result, for a vacancy that occurred prior to January 6, 1999, the initial 210-day period during which an acting officer may serve in the absence of a nomination began to run on January 6, 1999, and will continue for a 210-day period ending at the end of the day on August 3, 1999.[4]

The Vacancies Reform Act also includes a special provision that adjusts the beginning dates for vacancies at the start of a new President's first administration to account for the increased difficulty and time required to nominate PAS officers at the beginning of a new administration. *See* Q38 for a detailed discussion of that provision.

**Question 28.** How is the time limit affected when the President submits a nomination to fill the vacant office?

**Answer.** Once the President submits a nomination to fill the vacant office, an acting officer may continue to serve in an acting capacity while the nomination is pending before the Senate. 5 U.S.C. § 3346(b). A nomination remains pending

---

[3] *See* questions 6 and 7, as well, regarding vacancies that are not governed exclusively by the Vacancies Reform Act

[4] If August 3, 1999 is a day on which the Senate is not in session, the period of service may be extended. *See* Q36–Q37.

before the Senate until the nomination is confirmed, the nomination is withdrawn by the President, or the nomination is rejected or returned by the Senate.

**Question 29.** What is meant by the Senate's "rejection" of the nomination?

**Answer.** The Senate "rejects" a nomination only when the full Senate votes on and disapproves a nomination. A determination by a committee that it will not report the nomination out for a vote of the full Senate or a determination of the Senate otherwise not to vote on the nomination does not constitute a rejection of the nomination. *See Intrasession Recess Appointments*, 13 Op. O.L.C. 271, 274–75 (1989).

**Question 30.** What is meant by the Senate's "return" of the nomination?

**Answer.** "Return" takes its meaning from Senate Rule XXXI, which provides in relevant part that "if the Senate shall adjourn or take a recess for more than thirty days, all nominations pending and not finally acted upon at the time of taking such adjournment or recess shall be returned by the Secretary to the President, and shall not again be considered unless they shall again be made to the Senate by the President." Senate Rule XXXI(6); *see also* S. Rep. No. 105–250, at 15. Nominations left pending at the time of a recess in excess of thirty days and at the end of the first session of a Congress frequently are not returned, but are instead held over pursuant to unanimous consent of the Senate. All nominations left pending at the end of a Congress, however, are returned pursuant to Senate Rule XXXI.

**Question 31.** How is the time limit affected if a nomination is submitted after the 210-day period has expired?

**Answer.** The Vacancies Reform Act incorporates a spring-back provision, which permits an acting officer to begin performing the functions and duties of the vacant office again upon the submission of a nomination, even if the 210-day period expired before that nomination was submitted. If the 210-day limitation period expires before the President has submitted a nomination, the restrictions in § 3348 of the Act, which bar anyone from serving in an acting capacity, become operative. *See* Q39–Q49 (discussing these restrictions). If thereafter the President submits a nomination, an acting officer is again able to perform the functions and duties of the office as of the date the nomination is submitted. 5 U.S.C. § 3346(a)(2).

**Question 32.** What happens if the first nomination is rejected or returned by the Senate or is withdrawn by the President?

**Answer.** If the first nomination is rejected, returned, or withdrawn, a new 210-day period during which an acting official may serve begins to run on the date that the nomination is rejected, returned, or withdrawn. This is a new, full 210 days, and the period is not affected by the length of time an acting official served before the first nomination was submitted or by the length of time the first nomination was pending before the Senate. 5 U.S.C. § 3346(b)(1).

**Question 33.** How is the time limit affected by the submission of a second nomination to fill the vacant position?

**Answer.** The effect of the submission of a second nomination is the same as that of the first nomination. Once the President submits a second nomination, an acting officer may continue to serve in an acting capacity while the second nomination is pending before the Senate. Further, the spring-back provision discussed in question 31 also applies to the submission of a second nomination. 5 U.S.C. § 3346(a)(2), (b)(2).

**Question 34.** What happens if the second nomination is rejected or returned by the Senate or is withdrawn by the President?

**Answer.** If the second nomination is rejected, returned, or withdrawn, a new (and final) 210-day period begins to run on the date that that nomination is withdrawn, rejected, or returned. This is again a new, full 210 days, and the period is not affected by the length of time an acting official served before the second nomination was submitted or the length of time the second nomination was pending before the Senate. 5 U.S.C. § 3346(b)(2)(B).

**Question 35.** What effect does the submission of a third nomination have on the time limit?

**Answer.** The submission of a third nomination will not suspend or otherwise affect the running of the 210-day limit. The 210-day period that begins upon the rejection, return, or withdrawal of a second nomination is final; once that 210-day period ends, the bar in § 3348 of the Act on serving in an acting capacity takes effect.

**Question 36.** What happens if a 210-day period ends on a date when the Senate is not in session?

**Answer.** The Vacancies Reform Act provides for the time period to be extended when the last day of any 210-day period is "a day on which the Senate is not in session." In this circumstance, the last day of the period is deemed to be the second day the Senate is next in session and receiving nominations. 5 U.S.C. § 3348(c).

**Question 37.** Is there any other provision that would activate the spring-back provision while the Senate is recessed or adjourned?

**Answer.** The Vacancies Reform Act also includes a provision that would allow the President, in circumstances in which the Senate is recessed or adjourned for more than fifteen days, to provide the Senate with written notice of an intent to nominate and, by providing that notice, to trigger the spring-back provision. 5 U.S.C. § 3349d.

**Question 38.** Does the Vacancies Reform Act include any provision to account for the increased difficulty and time that may be involved in nominating PAS officers at the beginning of a new administration?

**Answer.** The Vacancies Reform Act includes a specific provision that adjusts the calculation of the time limits to provide extra time for a new administration to submit nominations for PAS positions. Specifically, the Act provides that for any vacancy existing at any point during a sixty-day period beginning on the date the oath of office is taken by a new President (i.e., a President who was not

the President immediately before taking the oath of office) the vacancy shall be deemed, for purposes of calculating the time limit, to have arisen either (i) ninety days after the date the oath of office was taken or (ii) ninety days after the date the vacancy occurred, whichever is later. Thus, even if an office became vacant well before the new President takes office, the time limit begins anew, and an extra ninety days is added on to what is deemed to be the first 210-day period. 5 U.S.C. § 3349a.

**Question 39.** What are the effects under the Vacancies Reform Act of the time limit expiring or there otherwise being no one qualified to serve in an acting capacity?

**Answer.** Unless there is a person qualified to serve in an acting capacity under the Vacancies Reform Act, i.e., there is a person who meets the requirements of an acting officer under § 3345, and the time limit for serving has not expired, (i) no one may serve as the "acting officer" and (ii) no one other than the head of the Executive agency may perform any "function or duty" of the vacant office. 5 U.S.C. § 3348(b). *See* Q43 (discussing what is a "function or duty" of the office under this section).

**Question 40.** If the position of head of the Executive agency is vacant, may the acting head perform a function or duty of a vacant office for which there is no qualified acting officer?

**Answer.** A properly serving acting head of an agency may perform a function or duty of a vacant office.

**Question 41.** What is the effect of someone other than a qualified acting officer or the head of the Executive agency performing a function or duty of the office?

**Answer.** Under the enforcement provisions set out in § 3348 of the Vacancies Reform Act, an "action" taken in the performance of a "function or duty" of a vacant office to which the Act applies shall have no force or effect unless it was performed either by someone qualified to serve as an acting officer or by the head of the Executive agency. 5 U.S.C. § 3348(d)(1). Further, the Act expressly provides that an action that has no force or effect under this provision cannot later be ratified. 5 U.S.C. § 3348(d)(2). While the effect of the enforcement provisions is severe, the breadth of conduct to which the provisions apply is expressly limited by the definition of "function or duty."

**Question 42.** How is an "action" defined under the Vacancies Reform Act?

**Answer.** "[A]ction" is defined under the Vacancies Reform Act by reference to the definition of "agency action" in 5 U.S.C. § 551(13) (1994). Agency action is defined in § 551(13) as "includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 3348(a)(1).

**Question 43.** How is a "function or duty" of the office defined under the Vacancies Reform Act?

**Answer.** For purposes of § 3348, a "function or duty" is defined as any function or duty of the PAS office that is required by statute or regulation to be per-

formed exclusively by the holder of that office. 5 U.S.C. § 3348(a)(2). *See* Q48 (discussing the practical scope of the definition of "function or duty").

**Question 44.** May an agency revise its regulations to make what had been an exclusive function or duty under its regulations non-exclusive?

**Answer.** Yes, the Vacancies Reform Act anticipates that Executive agencies may revise some of their regulations to eliminate a requirement under the regulation that a function be performed exclusively by the PAS officer. The Act, however, also includes a look-back provision that delays the effectiveness of such a revision for purposes of the Vacancies Reform Act. Under the definition, a function or duty will be treated as exclusive if, at any time during the 180 days preceding the date on which the vacancy occurred, the regulation provided that the duty or function was to be performed exclusively by the applicable officer. 5 U.S.C. § 3348(a)(2)(B)(ii).

**Question 45.** Does such a look-back provision also apply to the revision of statutes imposing exclusive duties on officers?

**Answer.** No, there is no similar look-back provision for statutes. If a statute is amended to eliminate an exclusive performance requirement, either by eliminating a restriction on the ability to delegate the function or by reassigning the function to another officer, that change will eliminate the exclusivity requirement under the Vacancies Reform Act without any delay. Similarly, if a regulation is revised because of a change in the underlying statutory authority, there is no delay imposed by the Act on the elimination of a requirement that the function be performed exclusively by the PAS officer.

**Question 46.** What if Congress imposes an exclusivity requirement on an office after a vacancy arises?

**Answer.** Such a statutory imposition of an exclusive function or duty on an office is effective as soon as the new statutory provision itself becomes effective, even if the statute is not enacted until after the vacancy.

**Question 47.** What oversight mechanisms exist to ensure agency compliance with the Act and application of the enforcement provisions?

**Answer.** The Act has a number of mechanisms to ensure agency compliance with the law. Executive agencies, of course, are expected to ensure that they are in compliance with the Act. The Act also establishes a reporting procedure under which events that trigger application of the Act and its enforcement provisions are reported to the General Accounting Office ("GAO") and to each House of Congress to assist their oversight of compliance. *See* Q50–Q53. Congress also expected that private parties would, through litigation challenging agency actions, provide an additional mechanism to ensure compliance. *See* S. Rep. No. 105–250, at 19–20 ("The Committee expects that litigants with standing to challenge purported agency actions taken in violation of these provisions will raise non-compliance with this legislation in a judicial proceeding challenging the lawfulness of the agency action.").

**Question 48.** Do the enforcement provisions of the Vacancies Reform Act mean that unless there is a properly serving acting officer nothing the PAS officer did may be performed by anyone other than the head of the Executive agency?

**Answer.** No, Congress understood that there would be occasions when the time limits would expire or when there would, for a period, be no one qualified to serve in an acting capacity. Congress also understood that if everything the PAS officer may have done in the performance of his or her duties had to be performed by the head of the Executive agency, the business of the government could be seriously impaired. *See* S. Rep. No. 105–250, at 30–31 (Additional Views). As a result, Congress delimited which functions could be performed only by a qualified acting officer or the head of the Executive agency, defining them as only those functions or duties assigned exclusively to the PAS officer by statute or regulation. Most, and in many cases all, the responsibilities performed by a PAS officer will not be exclusive, and the Act permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency.

**Question 49.** Are there PAS offices that are covered by the Vacancies Reform Act, but to which the enforcement provisions do not apply?

**Answer.** Yes, the Vacancies Reform Act sets out a list of offices to which the enforcement provisions of § 3348 do not apply. These offices are: (1) the General Counsel of the National Labor Relations Board, (2) the General Counsel of the Federal Labor Relations Authority, (3) any Inspector General appointed by the President, by and with the advice and consent of the Senate, (4) any Chief Financial Officer appointed by the President, by and with the advice and consent of the Senate, and (5) any office of an Executive agency for which there is a statutory provision that expressly prohibits the head of the Executive agency from performing the functions and duties of the office. 5 U.S.C. § 3348(e).

**Question 50.** What reporting requirements does the Vacancies Reform Act impose on agencies?

**Answer.** The Vacancies Reform Act requires the head of each Executive agency to provide notification of (i) a vacancy covered by the Act, (ii) the date on which the vacancy occurred, (iii) the name of any person serving in an acting capacity in connection with such a vacancy, (iv) the date that person began serving in an acting capacity, (v) the name of any person nominated to fill the vacancy, (vi) the date on which the nomination is submitted, and (vii) the date of any rejection, withdrawal, or return of the nomination. 5 U.S.C. § 3349(a).

**Question 51.** When must the report of each of these occurrences be provided?

**Answer.** The report is to be provided "immediately upon the occurrence" of each of these events.

**Question 52.** To whom should the reporting information described above be provided?

**Answer.** Each Executive agency is to provide the required information to the Office of Presidential Personnel. The Office of Presidential Personnel, in turn, will provide the information to the Office of Management and Budget, which

will be responsible for providing the report to GAO and to each House of Congress.*

**Question 53.** Why is this information being reported to GAO?

**Answer.** The information is provided to GAO to permit GAO to supervise compliance with the Act. If GAO determines that an acting officer is serving beyond the time limit allowed under the Vacancies Reform Act, it is to report that determination to relevant congressional committees, the President, and the Office of Personnel Management. 5 U.S.C. § 3349(b).

BETH NOLAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

\* Editor's Note: This procedure is subject to change, and has been changed, by the current administration, which has directed the agencies to report directly to GAO and Congress *See* Memorandum for the Heads of Federal Executive Departments and Agencies and Units of the Executive Office of the President, from Alberto R. Gonzales, Counsel to the President, *Re. Agency Reporting Requirements Under the Vacancies Reform Act* at 3 (Mar 21, 2001)